**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON**

**CIVIL ACTION NO. 12-208-DLB**

**DEWEY CHEEK**                                                                                                      **PLAINTIFF**

**vs.**                        <u>**MEMORANDUM OPINION & ORDER**</u>

**CAROLYN W. COLVIN, Commissioner
SOCIAL SECURITY ADMINISTRATION**                              **DEFENDANT**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and for the reasons set forth herein, will affirm the Commissioner's decision, as it is supported by substantial evidence.

      **I.**     **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Dewey Cheek filed applications for disability insurance and supplemental security income benefits on April 2, 2010, alleging disability as of November 30, 2009. (Tr. 166-178). His applications were denied initially and upon reconsideration. (Tr. 103-106, 112-117). At Plaintiff's request, an administrative hearing was conducted on February 14, 2011, by Administrative Law Judge William C. Zuber. (Tr. 46-85). On April 4, 2011, the ALJ ruled that Plaintiff was not disabled and therefore not entitled to either benefit. (19-41). This decision became the final decision of the Commissioner when the Appeals Council denied review on August 22, 2012. (Tr. 1-6).

1

On October 4, 2012, Plaintiff filed the instant action. The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 10, 11).

## II.   DISCUSSION

### A.   Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See Cutlip*, 25 F.3d at 286. Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). However, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal

a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform.  As to the last step, the burden of proof shifts from the claimant to the Commissioner.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B. The ALJ's Determination

At Step 1, the ALJ found that there was no evidence that Plaintiff had engaged in substantial gainful activity since the alleged onset of his disability.  (Tr. 21).  At Step 2, the ALJ found Plaintiff's hepatitis C, post status open reduction with internal fixation of the left femur, post status fracture of the right clavicle, degenerative disk of the lumbar spine, depression, mood disorder, polysubstance dependence, and borderline intellectual functioning to be severe impairments within the meaning of the regulations.  (Tr. 21-22).

At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.  (Tr. 25).  In doing so, the ALJ found that Plaintiff's mental impairments do not meet or equal the requirements of Listings 12.02 (organic mental disorders), 12.04 (affective disorders), 12.05 (mental retardation), 12.06 (anxiety-related disorders), or 12.09 (substance addiction disorders) because they do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration.  (Tr. 25-30).

At Step 4, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform light work with the following restrictions:

> [C]laimant is limited to simple; unskilled; routine; non-fast paced; no production quotas; with no more than occasional climbing of ramps and stairs; no more than occasional stooping, crouching, crawling or kneeling; no climbing of ladders, ropes or scaffolds; no overheard work; and no food preparation work. In addition [to] the above limitations, the claimant also has the following limitations of no more than occasional non-confrontational interaction with coworkers and supervisors; no contact with the general public and that he is able to sustain concentration, persistence and pace for at least two hour segments in an eight hour day.

(Tr. 30). Based upon this RFC, the ALJ concluded at Step 4 that Plaintiff was unable to perform any past relevant work. (Tr. 37).

Accordingly, the ALJ proceeded to the final step of the sequential evaluation. At Step 5, the ALJ found that there were a significant number of jobs in the national economy that Plaintiff could perform. (Tr. 38-40). The ALJ based this conclusion on testimony from a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age, education, work experience, and RFC. (Tr. 39). The VE testified that a hypothetical individual with Plaintiff's vocational profile and RFC could work as a marker (3,400 jobs in Kentucky/211,000 nationally), a laundry folder (1,500 jobs in Kentucky/85,000 nationally), and a sorter (2,200 jobs in Kentucky/125,900 nationally). (*Id.*). Based on the testimony of the VE and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff is capable of making a successful adjustment to other work and thus concluded that she was not under a "disability," as defined by the Social Security Act. (Tr. 39-40).

**C.    Analysis**

Plaintiff advances two arguments on appeal. First, Plaintiff contends that it is unclear whether the ALJ considered his borderline intellectual functioning impairment. Second, Plaintiff argues that the ALJ erred in failing to consider his functional illiteracy.

Each of these arguments will be addressed in turn.

### 1. Plaintiff's contention regarding the ALJ's consideration of his intellectual functioning impairment is without merit

Plaintiff's contention as the ALJ's consideration of his intellectual functioning impairment is as follows:

> Although the ALJ correctly concluded that Mr. Cheek's borderline intellectual was a severe impairment in his analysis of this case,[1] it is not clear whether the ALJ considered Mr. Cheek's severe non-exertional impairment of functional borderline intellectual function at other steps of this sequential 5 Step determination analysis. Accordingly, the Plaintiff requests that this case be remanded for the ALJ to consider Cheek's severe impairment of functional borderline intellectual function in his 5 Step analysis.

(Doc. # 10-1, at 7-8). As written, Plaintiff's argument is that the ALJ failed to consider his intellectual functioning impairment in assessing whether Plaintiff had engaged in substantial gainful activity since the alleged onset of his disability, whether he has an impairment or combination of impairments listed in, or medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1, whether he was able to perform any past relevant work, and whether significant numbers of jobs exist in the national economy which he can perform. However, Plaintiff's impairments have no bearing on whether he had engaged in substantial gainful activity, and the number of applicable jobs in the national economy is completely dependent on the resolution of the prior steps. The Court, then, will focus its

---

[1] Because he concedes that the ALJ deemed his borderline intellectual impairment to be severe, the Court views Plaintiff's reliance upon *Jamison v. Comm'r of Soc. Sec.*, No. 1:07CV152, 2008 WL 2795740 (S.D. Ohio July 18, 2008) and *Meadows v. Comm'r of Soc. Sec.*, No. 1:07CV1010, 2008 WL 4911243 (S.D. Ohio Nov. 13, 2008) in support of his arguments to be misplaced. In both of those cases, the ALJ failed to find that the complained-of condition was a severe impairment, which meant that the primary issues were whether the ALJ erred in failing to do so and, if so, whether that error was harmless because he considered the impairment at the other steps of the sequential evaluation process. *Jamison*, 2008 WL 2795740, at *7-9; *Meadows*, 2008 WL 4911243, at *12-13. These cases merit no further consideration herein in light of this distinction.

5

inquiry on Steps 3 and 4.

With respect to the comparison of impairments to those listed in 20 CFR Part 404, Subpart P, Appendix 1, the ALJ assessed Plaintiff's activities of daily living, social functioning, concentration, persistence, and pace, and episodes of decompensation in determining that his impairments, including his borderline intellectual functioning impairment, did not meet or equal Listings 12.02 (organic mental disorders), 12.04 (affective disorders), 12.05 (mental retardation), 12.06 (anxiety-related disorders), or 12.09 (substance addiction disorders). (Tr. 25-28). More importantly, the ALJ then paused to specifically address Listing 12.05 (mental retardation) as follows:

> Turning back to listing 12.05, the requirements in paragraph A are met when there is mental incapacity evidence by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded. In this case, these requirements are not met because the claimant reported that he is able to prepare simple meals, perform simple household tasks and care for his personal needs (Exhibit B3E, pp.3, 4).
>
> As for the "paragraph B" criteria, they are not met because, although the claimant does have a verbal, performance, or full scale IQ of 59 or less, the undersigned does not find that these scores are a valid indicator of the claimant's I.Q., given his ability to function on a daily basis without assistance. Additionally, the claimant has performed previous employment (Exhibit B4E, p.2) that the vocational expert testified to as semi-skilled work. Furthermore, although the school records do indicate that the claimant only finished the seventh grade, his grades for the period of time that he was enrolled in the eighth grade were all listed as satisfactory (Exhibit B12E, p.2). Even though the claimant testified to being in special education classes, there are no school records to demonstrate a history of special education instruction nor psychometric test results prior to him having attained the age of 22 years. Finally, Dr. Baggs expressed concern regarding the validity of the claimant's intellectual and academic functioning due to the claimant's withholding of critical information during the examination process (Exhibit B5F, p.11). Dr. Baggs further stated that the claimant might not have extended the best effort possible during his I.Q. and academic achievement testing (Id.). Therefore, for the above given reasons, the undersigned has

> determined that the category "B" criteria from listing 12.05 has not been satisfied.
>
> Finally, the "paragraph C" criteria of listing 12.05 are not met for the same reasons that the criteria for paragraph "B" of listing 12.05 were not met. The undersigned did not find that the claimant's listed I.Q. scores were a valid indication of his actual cognitive and academic ability because of his ability to function on a daily basis without assistance, his ability to perform semi-skilled employment, as well as Dr. Baggs own personal observations.

(Tr. 29-30). For these reasons, Plaintiff's argument as to Step 3 is without merit.

As to the ability to perform any past relevant work, the ALJ not only found that Plaintiff has the RFC to perform light work, but also established the following restrictions:

> [C]laimant is limited to simple; unskilled; routine; non-fast paced; no production quotas; with no more than occasional climbing of ramps and stairs; no more than occasional stooping, crouching, crawling or kneeling; no climbing of ladders, ropes or scaffolds; no overheard work; and no food preparation work. In addition [to] the above limitations, the claimant also has the following limitations of no more than occasional non-confrontational interaction with coworkers and supervisors; no contact with the general public and that he is able to sustain concentration, persistence and pace for at least two hour segments in an eight hour day.

(Tr. 30). The ALJ subsequently stated that, "[g]iven the claimant's ability to perform his daily activities, his apparent ability to perform jobs that require semi-skill levels and Dr. Timothy L. Baggs' own observations, the undersigned has determined that the claimant is functioning at a borderline intellectual level." (Tr. 36). However, the ALJ did not believe his mental health impairments to be as disabling as Plaintiff alleged, yet "still made the appropriate considerations for these impairments and [] considered them . . . regarding the claimant's [RFC]." (*Id.*). As a result, Plaintiff's contention as to Step 4 also fails.

### 2. Plaintiff's contention regarding the ALJ's consideration of his functional illiteracy is without merit

Plaintiff also takes issue with the ALJ's considerations of his functional illiteracy. In

7

support, he relies upon Dr. Baggs consultive examination report dated July 1, 2010. (Tr. 311-324). In particular, he references the doctor's observation that, "[w]ith the above level of academic achievement, [Plaintiff] would be functionally illiterate." (Tr. 317).

At the outset, the Court notes that this argument is essentially a regurgitation of Plaintiff's complaint as to the ALJ's consideration of his intellectual functioning impairment. Setting that aside, the ALJ specifically noted that Plaintiff was able to legibly fill out his daily goal sheets during his last hospital stay despite testifying that he was unable to read and write. (Tr. 35, 62, 417-425). Simply put, this argument is also without merit.

### III.   CONCLUSION

For the reasons stated herein, the Court concludes that the ALJ's finding that Plaintiff was not disabled for purposes of the Social Security Act was supported by substantial evidence. Accordingly, for the reasons stated,

**IT IS ORDERED** as follows:

1. The decision of the Commissioner is supported by substantial evidence and is hereby **AFFIRMED**;

2. Plaintiff's Motion for Summary Judgment (Doc. # 10) is hereby **DENIED**;

3. Defendant's Motion for Summary Judgment (Doc. # 11) is hereby **GRANTED**;

4. A Judgment affirming this matter will be entered contemporaneously herewith.

This 9th day of April 2013.



G:\DATA\SocialSecurity\MOOs\London\6-12-208 Cheek MOO.wpd